IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **RICHARD CATRON, individually, and on behalf of those similarly situated,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**COLT ENERGY, INC., et al.,** )<br>)<br>)<br>**Defendants.** )<br>) | Case No. 13-4073-CM |

## MEMORANDUM AND ORDER

Plaintiff Richard Catron filed this case in the District Court of Wilson County, Kansas, individually and on behalf of those similarly situated. Plaintiff claims that defendants Colt Energy, Inc.; Layne Energy Resources, Inc.; and Layne Energy Operating, LLC violated law prohibiting restraint of trade in leasing minerals in Southeast Kansas. Specifically, plaintiff claims that defendants allocated markets instead of competing. Defendants removed the case to federal court, basing removal on the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2). The case is now before the court on Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 50).

Defendants argue that they are entitled to dismissal of this case (or some claims) for five reasons: (1) plaintiff fails to show a plausible violation of the Kansas Restraint of Trade Act ("KRTA") under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); (2) plaintiff is not entitled to the damages he seeks; (3) plaintiff is not entitled to any relief for his trespass claim; (4) defendants are exempt from liability because their business is under the supervision and control of the Kansas Corporation Commission ("KCC"); and (5) to the extent that plaintiff may pursue any claims, those claims are limited by the statute of limitations. The court addresses each of these arguments in turn.

-1-

**I.      Standard of Review**

The court will grant a 12(b)(6) motion to dismiss only when the factual allegations fail to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Although the factual allegations need not be detailed, the claims must set forth entitlement to relief "through more than labels, conclusions and a formulaic recitation of the elements of a cause of action." *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1216 (D. Kan. 2008). The allegations must contain facts sufficient to state a claim that is plausible, rather than merely conceivable. *Id*.

"All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court construes any reasonable inferences from these facts in favor of the plaintiff. *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). In reviewing the sufficiency of a complaint, the court determines whether the plaintiff is entitled to offer evidence to support his claims—not whether the plaintiff will ultimately prevail. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

**II.     Factual Allegations**

The following facts are taken from plaintiff's Second Amended Complaint and viewed in the light most favorable to plaintiff.

Defendants began leasing mineral acres in southeast Kansas in the early- or mid-2000s. They produced oil and gas and paid royalties to land owners. But instead of competing for leases, defendants allocated the mineral leasing market. Around 2004 or 2005, defendants entered into an express agreement (an Area of Mutual Interest agreement, or "AMI agreement") to divide the southeast Kansas markets geographically. Each defendant would seek leases in a specific area, and they agreed

that they would not compete for leases in the other's area. Further, each defendant transferred wells to each other that were located in the other's area.

Plaintiff alleges that defendants entered into the AMI agreement for these purposes: "to create or carry out restrictions on trade or commerce, or aids to commerce, or to carry out restrictions in the full and free pursuit of any business authorized or permitted by Kansas law." (Doc. 47 at 5.) This damaged plaintiff and other putative class members because they leased minerals in an uncompetitive market.

According to plaintiff, defendants' restraint of trade renders all leasing transactions void. Defendants therefore had no right to take minerals and were trespassers. Plaintiff seeks damages for all revenue taken from the leases. Plaintiff also seeks damages for trespass.

Finally, plaintiff alleges that the statute of limitations is tolled because defendants concealed their AMI agreement and the arrangement not to compete. Plaintiff and other putative class members could not have known of their cause of action.

### III.     Discussion

#### A.     Plausibility of Claims

Defendants first contend that the court must dismiss plaintiff's claims because they do not meet the *Twombly* standard for antitrust pleading. Defendants argue that plaintiff offers only conclusory allegations and antitrust labels and buzzwords. Specifically, plaintiff fails to offer facts that plausibly suggest the "'purpose' of any alleged restraint or that [d]efendants' alleged 'market allocation' was 'designed to' or 'tend[ed] to' achieve an anticompetitive effect." (Doc. 51 at 7.) Because plaintiff also alleges that other lessees were leasing minerals in the same area, defendants maintain, plaintiff's own allegations contradict a claim of anticompetitive effect.

Plaintiff alleges liability under two Kansas statutes: Kan. Stat. Ann. §§ 50-101 and 50-112.[1] Under § 50-101, plaintiff must show "a combination of capital, skill or acts" for the purpose of "creat[ing] or carry[ing] out restrictions in trade or commerce" or "carry[ing] out restrictions in the full and free pursuit of any business authorized or permitted by the laws of this state." And Kan. Stat. Ann. § 50-112 declares "against public policy, unlawful and void" any agreements "made with a view or which tend to prevent full and free competition" or which are "designed or which tend to advance, reduce or control the price or the cost to the producer or the consumer of any such products or articles . . ."

Plaintiff's allegations are sufficient to survive defendants' motion to dismiss. From plaintiff's complaint, the court can make reasonable inferences that would support a plausible claim. Put simply, plaintiff alleges that defendants agreed to split up the land in southeast Kansas so they would not have to compete with each other for mineral leases. The impact was that plaintiff (and others) received less favorable lease terms than he could have received in a competitive market. And although there were other lessees in the area, defendants were the largest lessees. Plaintiffs allege that defendants' agreement not to compete prevented or tended to prevent full and fair competition.

Plaintiff's allegation that the area contained other lessees does not necessarily contradict his allegation that defendants' actions were intended to restrain trade and tended to result in an anticompetitive effect. Whether this "admission" is fatal to plaintiff's claim is an issue for a factfinder—not for the court at the motion-to-dismiss stage. The court determines that plaintiff has sufficiently pleaded claims under the KRTA.

---

[1] Note that § 50-112 has been amended, effective April 18, 2013. Other statutes related to this case were amended with the same effective date.

**B.     Damages**

Next, defendants argue that plaintiff is not entitled to the damages he seeks.  Defendants' specific arguments are: (1) plaintiff cannot get a return of all revenue because the leases themselves are not void under Kan. Stat. Ann. § 50-112; and (2) according to the plain text of Kan. Stat. Ann. § 50-115, plaintiff cannot get "full consideration" damages.

1.     Void Leases

As noted above, the agreement that plaintiff claims violates § 50-112 is the AMI agreement. According to plaintiff, this agreement is unlawful and void.  By extension, then, plaintiff claims that because the AMI agreement is unlawful, the leases entered with putative class members must be voided.  But plaintiff expands the reach of the statute too far.  Plaintiff makes no allegations that the leases themselves contain anticompetitive provisions.  Even if the AMI agreement is ultimately held unlawful, § 50-112 does not also require that the leases entered with plaintiff and other parties be voided.

The court finds the rationale in *In re Universal Services Fund Telephone Billing Practices Litigation*, No. 02-MD-1468, 2003 WL 21254765 (D. Kan. May 27, 2003), analogous and persuasive. In that case, Judge Lungstrum held that "a contract that is legal on its face and does not call for unlawful conduct in its performance is not voidable or unenforceable simply because it resulted from an antitrust conspiracy." *Id.* at *3 (citing *Kelly v. Kosuga*, 358 U.S. 526, 520–21 (1982)).  The court has reviewed the New Mexico case cited by plaintiff—*United Nuclear Corp. v. General Atomic Co.*, 629 P.2d 231 (N.M. 1980)—but finds the case both distinguishable and unpersuasive.

In contrast to the instant case, the contracts in *United Nuclear* were executory.  629 P.2d at 277. The plaintiff in *United Nuclear* was not seeking to avoid its obligation to deliver a product, yet still get

-5-

paid for it.  *Id.*  The New Mexico court therefore found it significant that the potential of unjust enrichment was not involved.  *Id.*  This same justification does not apply in the instant case.

This court also disagrees that the New Mexico court's reading of its own pre-1979 statute should apply to the Kansas statute involved here.  Plaintiff has cited no Kansas case that looks to New Mexico courts for guidance.  And applying the logic in *United Nuclear* would conflict with the rationale in *In re Universal Services Fund Telephone Billing Practices Litigation*.  It could result in voiding a contract that is not on its face illegal—a result that Kansas law does not contemplate.  Even if the court were to assume that the AMI agreement violated antitrust law, such violation does not void the lease between defendants and plaintiff.

### 2. Full Consideration Damages

As related to plaintiff's request for full consideration damages, Kan. Stat. Ann. § 50-115 provides:

> Except as provided in K.S.A. 12-205, and amendments thereto, any person injured or damaged by any such arrangement, contract, agreement, trust or combination, described in K.S.A. 50-112 and 50-113, and amendments thereto, may sue for and recover in any court of competent jurisdiction in this state, of any person, the full consideration or sum paid by such person for any goods, wares, merchandise and articles included in or advanced or controlled in price by such combination, or the full amount of money borrowed.

The plain language of this statute indicates that the full consideration damages remedy belongs to buyers.  The statute refers to "the full consideration or sum paid" by a person for "goods, wares, merchandise and articles."  Kan. Stat. Ann. § 50-115.  Plaintiff, in contrast, was a lessor.  He did not make payments to defendants; rather, they paid him for the use of his land.  (*See* Doc. 47 at 8 (alleging that defendants' actions "did in fact restrain trade in mineral leasing and thereby artificially decreased the overall prices that would have been paid to [p]laintiff and the [c]lass by a competitive lessee.").)  The statute authorizing full consideration damages does not apply to this situation.

### 3. Other Damage Requests

Defendants only move for dismissal of plaintiff's claims for damages on the two grounds identified above. According to plaintiff's response brief, plaintiff also seeks: (1) general antitrust damages under Kan. Stat. Ann. § 50-108; (2) general antitrust damages under Kan. Stat. Ann. § 50-161(b); and (3) trespass damages. The first two remedy theories remain valid.[2] The third is addressed below.

## C. Trespass Claim

Plaintiff's claim for trespass is founded in the theory that the leases are void. Because the court has found that the leases are not voided by any anticompetitive conduct, there is no basis for plaintiff's trespass claim. The court dismisses Count II.

## D. KCC Exemption

Defendants next contend that they are exempt from the KRTA's antitrust provisions. Kan. Stat. Ann. § 50-148 provides: "The provisions of this act shall not apply to persons whose business is under the supervision and control of the state corporation commission . . . ." Further, Kan. Stat. Ann. § 74-623(a) provides that "[t]he state corporation commission shall have the exclusive jurisdiction and authority to regulate oil and gas activities." And defendants provide an extensive list of oil and gas operation activities that are regulated by the KCC. (*See* Doc. 51 at 15–16.)

While it is true that the KCC regulates a host of oil and gas activities, none of the activities listed include acquiring mineral leases. "The Commission has a limited jurisdiction. It possesses no powers not given it by the statute." *Bennett v. Corp. Comm'n*, 142 P.2d 810, 815 (1943). Defendants have not shown that the KCC has the statutory authority to supervise or control the leasing of minerals. They have not met their burden for dismissal on this basis.

---

[2] These two theories are mentioned in the complaint only by statute. (Doc. 47 at 9.) But plaintiff more explicitly identifies the theories in his response brief. (Doc. 57 at 6 n.8.)

### E. Statute of Limitations

Finally, defendants contend that plaintiff's claims accruing before March 25, 2010, are barred by the three-year statute of limitations. *See* Kan. Stat. Ann. § 60-512(2). Plaintiff alleges that defendants concealed their conspiracy and the terms of the AMI agreement. Because of these actions, plaintiff contends, all claims are timely under alternative theories of fraudulent concealment, equitable estoppel, the discovery rule, or another similar doctrine.

Specifically, plaintiff makes the following allegations suggesting that the statute of limitations should be tolled:

> Defendants concealed their AMI and the arrangement not to compete in the leasing of minerals in Southeast Kansas. Indeed, on information and belief, the AMI will recite on its face that it is confidential. In any event, Defendants kept their AMI, combination, trust, conspiracy, agreement and/or arrangement secret. In leasing, Defendants uniformly purported to act, and represented that they were acting, unilaterally and independently; and Defendants did not disclose that they had actually agreed with competitors to divide the market geographically in order to avoid the competition that should have existed and to reduce the overall consideration that would be required to obtain leases. Indeed, the leases themselves are entered into or acquired by individual Defendants, not by the Defendants as a group; and, the leases make no reference to the AMI or the arrangement to geographic[ally] allocate mineral leasing in Southeast Kansas. Given the self-concealing nature of Defendants' wrongful conspiracy, arrangement, agreement, trust, and/or combination, Class members did not know, and could not have reasonably known, of the illegal agreement, trust, combination, arrangement or conspiracy that had the effect of reducing the amount that would otherwise have been received had there been a competitive market for leases instead of an illegal restraint.

(Doc. 47 at 11.)

Defendants complain that these allegations lack the required specificity that a claim of fraudulent concealment must have. "To toll the statute of limitations based on fraudulent concealment, plaintiff[] must show defendants' use of fraudulent means, successful concealment from plaintiff[], and the fact that plaintiff[] did not know or could not have known by due diligence of their cause of action." *In Re: Urethane Antitrust Litig.*, 663 F. Supp. 2d 1067, 1078 (D. Kan. 2009) (citing *Ballen v.*

*Prud. Bache Sec.*, 23 F.3d 335, 337 (10th Cir. 1994)).  As defendants point out, fraudulent concealment requires a higher standard of pleading specificity.  A plaintiff must plead it with particularity under Fed. R. Civ. P. 9(b).  *Id.*

Although the court would prefer to see more factual detail supporting a claim of fraudulent concealment, this does not mean that the statute of limitations automatically bars claims older than three years.  Plaintiff has pleaded other theories of tolling for which a heightened pleading standard is not required.  *See Arkalon Grazing Ass'n v. Chesapeake Operating, Inc.*, No. 09-1394-EFM, 2010 WL 4622441, at *2 (D. Kan. Nov. 4, 2010).  Based on these allegations, the court cannot find as a matter of law that claims accruing more than three years before the filing of this case are barred.

### III.     Conclusion

The parties made a number of arguments in their briefs that are either addressed only briefly above, or are not mentioned at all.  This does not indicate that the court overlooked the argument.  The court fully considered the content of all briefs, even if not discussed within this Memorandum and Order.

For the above-stated reasons, the court dismisses plaintiff's trespass claim.  Plaintiff may not seek damages on his "voided lease" theory or full consideration damages, but he may seek damages for violations of the KRTA under Kan. Stat. Ann. §§ 50-108 and 50-161(b).  At this time, the court makes no determination on whether some of plaintiff's claims will be barred by the statute of limitations.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 50) is granted in part and denied in part. The parties should contact the magistrate judge to set a scheduling conference.

Dated this 17th day of December, 2014, at Kansas City, Kansas.

                                              s/ Carlos Murguia
                                              **CARLOS MURGUIA**
                                              **United States District Judge**